UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| APPLICATION OF MEDYTOX, INC. FOR | ) | No. 1:18-mc-00046-TWP-DLP |
| AN ORDER PURSUANT TO 28 U.S.C. | ) | |
| SECTION 1782 TO CONDUCT | ) | |
| DISCOVERY FOR USE IN A FOREIGN | ) | |
| PROCEEDING | ) | |
| | ) | |

## REPORT AND RECOMMENDATION ON APPLICATION FOR ASSISTANCE IN FOREIGN LITIGATION

Medytox, Inc. ("Medytox"), has filed this Application for Assistance in Foreign Litigation and requests that the Court issue an order granting it leave to obtain discovery for use in a foreign court proceeding, pursuant to 28 U.S.C. § 1782. Medytox seeks to take the deposition of and submit thirteen (13) requests for production to its former employee and Respondent, Byung Kook Lee ("Dr. Lee"). Medytox intends to use this information in connection with a case pending in the Seoul Central District Court in Republic of Korea.[1] (Case No. 2017Ga-Hap574026). In that case, Medytox has sued Daewoong Pharmaceuticals Co., Ltd. and Daewoong Co., Ltd. (the "Daewoong Defendants") for misappropriation of trade secrets.

## BACKGROUND

Medytox is a Korean biopharmaceutical company that develops and produces C. botulinum toxin Type A neurotoxin ("BTX") biopharmaceutical drugs. Medytox's principal place of business is located in Seoul, Korea. BTX drugs are used

---

[1] For brevity's sake, the Court will hereinafter refer to the Republic of Korea or South Korea as "Korea."

cosmetically to remove skin wrinkles and used medically to treat certain muscular conditions. One of the most well-known BTX drugs is Botox, which is sold by Allergan.

According to Medytox, the Daewoong Defendants distributed Botox in Korea for Allergan from April 1995 to May 2006, and again from April 2007 to January 2009.[2] In 2010, the Daewoong Defendants filed a claim for a new BTX drug with the Korean Ministry of Food and Drug Safety, asserting that they had discovered a BTX strain that they isolated from Korean soil. The Korean Ministry of Food and Drug Safety approved the Daewoong Defendants' BTX drug, Nabota, in November 2013. Because Medytox believed that the Daewoong Defendants' development of a BTX drug in such a short timeframe was improbable, and their explanation for how they acquired the BTX strain was impossible, Medytox launched an internal investigation into the potential theft of its BTX trade secrets, including the potential theft of Medytox's own BTX strain.

To develop a BTX drug, a manufacturer needs both a BTX strain and a process to safely handle, develop, and commercialize the strain. Medytox invested millions of dollars and conducted extensive research to successfully commercialize and develop its BTX strain into a drug called Meditoxin. During its development of Meditoxin, Medytox accumulated a substantial amount of confidential and proprietary information that it uses for the manufacture of the drug, all of which

---

[2] Medytox contends also that in September 2008, Allergan informed the Daewoong Defendants that it was considering terminating the Daewoong Defendants' contract to distribute Botox in Korea, and that the Daewoong Defendants then began searching for a replacement product.

was compiled into a comprehensive manual called the Master Production and Control Record ("Master Record").

Dr. Lee worked as a researcher for Medytox in Korea from 2004 through 2008. Dr. Lee's position required that he be given access to Medytox's BTX strain and Master Record, along with other proprietary information related to the Meditoxin manufacturing process.

In August 2008, Dr. Lee left Medytox to pursue graduate studies at Hanyang University in Korea. While at Hanyang University, Dr. Lee and CW Suh, an employee of the Daewoong Defendants, worked and authored an academic paper together. Both Dr. Lee and Mr. Suh studied under the same professor, Eun-Kyu Lee, and worked in the same lab together.

Dr. Lee worked as a consultant for the Daewoong Defendants starting in 2010. He would advise the Daewoong Defendants on the safe management of botulinum toxin strains. In 2011, Dr. Lee began working as a visiting scholar at Purdue University in Indiana. During his time at Purdue, Dr. Lee worked with Dr. Kinam Park, a professor with close ties to the Daewoong Defendants. Eventually, Dr. Lee enrolled in a post-doctorate program at Purdue. Currently, Dr. Lee resides in the Southern District of Indiana.

As a result of Medytox's internal investigation, in January 2017, Medytox filed a criminal complaint with the Seoul Metropolitan Police Agency ("SMPA") against the Daewoong Defendants and Dr. Lee. [Dkt. 15 at 4]. After filing its complaint, Medytox learned that Mr. Suh had obtained a BTX strain and related trade secrets

from a friend at Hanyang University, an individual who Medytox understood to be Dr. Lee. Additionally, Medytox believes that senior management at Daewoong instructed Mr. Suh to encourage Dr. Lee to provide the Daewoong Defendants with the key components of Medytox's Master Record and its BTX strain. In connection with the criminal complaint, the SMPA requested an interview with Dr. Lee, who ultimately travelled to Korea for two days of interviews. [Dkt. 18-1 at 1.]

Medytox represents that through its investigation, it learned Dr. Lee was in extensive contact with the Daewoong Defendants during the development of their drug, Nabota. Before leaving Medytox, Dr. Lee allegedly printed several copies of Medytox's Master Record and emailed to his personal email address documents containing a number of Medytox's proprietary trade secrets. Medytox also discovered that sometime in 2008, Dr. Lee used his access card to enter Medytox's strain reserve, where he removed and took with him a viable BTX strain. Medytox believes that Dr. Lee stole its BTX strain and the related Master Record and then sold those items to the Daewoong Defendants. Medytox also believes that the Daewoong Defendants encouraged Dr. Lee to carry out this theft.

On June 6, 2017, Medytox filed a lawsuit against the Daewoong Defendants and Dr. Lee in state court in Orange County, California (Cause No: 30-2017-00924912-CU-IP-CJC) (the "California Action"). Medytox picked California because it believed that it could pursue claims against all of the Defendants there. On October 12, 2017, the California Superior Court granted Dr. Lee's motion to dismiss for lack of personal jurisdiction. [Dkt. 16-3.] Regarding the Daewoong Defendants'

Motion to Dismiss, the California Court found that the appropriate forum to adjudicate the remaining allegations was Korea, and thus stayed the California Action pending the resolution of proceedings in Korea. [Dkt. 16-3.]

On October 30, 2017, Medytox filed suit against the Daewoong Defendants in Seoul Central District Court in Korea, alleging theft and misappropriation of trade secrets (the "Korean Action"). Dr. Lee was not named as a party in the Korean Action. This litigation is ongoing, and the Korean court has ordered the parties to conduct sporulation testing on their BTX strains to determine the origin of the Daewoong Defendants' BTX strain. [Dkt. 2-1 at 5.]

On May 4, 2018, Medytox brought a separate suit against Dr. Lee in state court in Marion County, Indiana (Cause No. 49D01-1805-PL-017584) (the "Indiana Action"). Medytox's Indiana complaint alleged the following counts against Dr. Lee: (i) violation of the Indiana Uniform Trade Secrets Act; (ii) breach of contract; (iii) conversion; (iv) unjust enrichment; and (v) violation of the Korean Unfair Competition Prevention and Trade Secret Protection Act. On October 4, 2018, the Marion County Court dismissed Count Five and stayed the remaining counts pending resolution of the Korean Action.

## DISCUSSION

On July 13, 2018, Medytox filed an application for judicial assistance in the Southern District of Indiana, pursuant to 28 U.S.C. § 1782, to obtain discovery from Dr. Lee to use in the Korean Action. Medytox's application, accompanied by two declarations and a memorandum of law, seeks evidence from Dr. Lee relating to his

work with both Medytox and the Daewoong Defendants and their representatives during the time of the development and production of the Daewoong Defendants' drug, Nabota.

Title 28 U.S.C. §1782 authorizes a federal district court to order the production of evidentiary materials for use in foreign legal proceedings, provided the materials are not privileged. *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The purpose of § 1782 is to provide efficient means of assistance to parties in international litigation seeking "discovery relating to that litigation in a federal district court, and in the discretion of that court, . . . obtain[ing] as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011). In addition, § 1782 also aims to encourage "foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2nd Cir. 2004). § 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and

the document or other thing produced, in accordance with
the Federal Rules of Civil Procedure.

28 U.S.C.A. § 1782(a).

In 1855, Congress first provided for federal-court aid to foreign tribunals, specifically by authorizing the federal courts to respond to letters rogatory forwarded through diplomatic channels. *Intel,* 542 U.S. at 241. The scope of federal courts' authority to assist foreign tribunals has expanded ever since. *Id.* "Section 1782 is the product of congressional efforts . . . to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007 (11th Cir. 2015) (citing *Intel*, 542 U.S. at 241). In its present form, Section 1782 has four prima facie requirements that must be met before a district court is authorized to grant an application for discovery:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*See* 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 241; *In re Bayer Ag.*, 146 F.3d 188, 193 (3d Cir. 1998).

Neither party disputes and the Undersigned submits that Medytox's application meets the prima facie requirements of 28 U.S.C. § 1782. First, Medytox, as a litigant in the Korean Action, is an "interested person" as defined in the statute. *Intel*, 542 U.S. at 256 ("litigants are included among, and may be the most

common example of, the 'interested person[s]' who may invoke § 1782"). Second, the application seeks evidence, specifically in the form of Dr. Lee's deposition testimony and 13 requests for production. Third, if the application is granted, the evidence will be used in the ongoing Korean Action. And, lastly, Dr. Lee, from whom discovery is sought, resides here in the Southern District of Indiana. This is not, however, the end of the analysis.

Once the district court determines it has the authority to grant the application, it must then focus its analysis on whether and to what extent the § 1782(a) request is appropriate. *Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). The Supreme Court set forth four discretionary factors that the district court must consider in ruling on a § 1782(a) request, after the statutory requirements are satisfied, including: (1) whether "the person from whom discovery is sought is a participant in the foreign proceedings" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the "§ 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is otherwise "unduly intrusive or burdensome." *Intel* 542 U.S. at 264-65. The Court will address each factor in turn.

The first discretionary factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceedings." *Intel*, 542 U.S. at 264.  The parties agree that Dr. Lee is a non-party in the pending Korean Action. Nevertheless, Dr. Lee argues that he should be considered a participant in the Korean Action for § 1782 purposes because he is being sued in Indiana state court, and Medytox will be seeking the same discovery in the Indiana Action that it is pursuing here. On October 4, 2018, the Indiana Commercial Court stayed the Indiana Action pending resolution of the Korean Action. Thus, Dr. Lee's argument is moot. Moreover, as the Eleventh Circuit has found, there is "nothing in the language of § 1782 that purports to limit later uses of evidence that have been properly obtained under § 1782." *Glock*, 797 F.3d at 1006.

Next, Dr. Lee maintains that because the information that Medytox seeks from him is available either through his testimony at trial in the Korean Action or from the Daewoong Defendants, he should be considered a participant under *Intel* factor one.[3] Relying on *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *5-7 (S.D.N.Y. Oct. 15, 2009), Dr. Lee argues that § 1782 discretionary factor one weighs in favor of denying the application because the information sought from him through discovery is readily available through other means. In that case, the court weighed whether the information sought was within

---

[3] The Undersigned will address Dr. Lee's exhaustion argument regarding document discovery under *Intel* discretionary factor three.

the foreign tribunal's jurisdictional reach; specifically, the court considered whether the request to take the deposition of and to seek discovery from a company's corporate secretary and director was appropriate. The court concluded that all of the documents requested for production were in the possession of other directors of the company, who were plaintiffs in the foreign proceeding, and, accordingly, rejected Promnefstroy's Section 1782 application for document production. *Id.* Unlike the situation in *Promnefstroy*, Medytox is seeking to utilize American discovery and conduct a pretrial deposition of Dr. Lee, which the Korean discovery rules do not contemplate. Moreover, information related to Dr. Lee's knowledge and alleged wrongdoing in regard to the Daewoong Defendants' development of its BTX strain and drug undoubtedly resides with Dr. Lee in the United States, not in Korea or with the Daewoong Defendants. [4]

Based on Medytox's application, Dr. Lee, a former researcher at Medytox and a former consultant for the Daewoong Defendants, holds relevant information that could assist Medytox in prosecuting its case against the Daewoong Defendants.[5] Dr. Lee, a seven-year resident of the Southern District of Indiana, however, is beyond the jurisdictional reach of the Seoul Central District Court in Korea, raising the

---

[4] Dr. Lee maintains that he should be considered a participant for § 1782 purposes because Medytox deliberately chose to sue Dr. Lee in the United States, rather than in Korea. Dr. Lee relies on *Kulzer v. Biomet, Inc.*, No. 3:09-MC-275 CAN, 2009 WL 3642746, at *6-7 (N.D. Ind. Oct. 29, 2009) to argue that granting this application would encourage serial forum shopping, contravening the purpose of Section 1782. Evaluation of this argument is more appropriate in this Court's analysis of the third *Intel* factor and, accordingly, the Undersigned will address this argument here.

[5] *See generally*, Order on Motion to Stay at 2-11, *Medytox, Inc. v. Byung Kook Lee*, 49D01-1805-PL-017584, (Marion County Commercial Court Oct. 4, 2018).

need for Medytox to file this § 1782(a) application. Accordingly, the Undersigned submits that factor one weighs in favor of granting Medytox's application.

(b.)   *Factor Two: Receptivity of the Korean Courts to United States Judicial Assistance*

The second discretionary factor looks to whether the foreign court would accept assistance from federal district courts. *See Intel*, 542 U.S. at 264. Courts have held that this factor weighs in favor of granting the application unless there is some "authoritative proof" that the foreign court would oppose such assistance. *See, e.g.*, *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100–01 (2d Cir. 1995) ("Since no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record, we are unable to accept the district court's conclusion that granting MEPA's discovery request will in fact offend the people of France."); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding that the second *Intel* factor strongly favored respondents because the Korean Fair Trade Commission ("KFTC") submitted an amicus brief that asked this court "to deny Qualcomm's applications in their entirety as a matter of comity" and stated that "the KFTC has no need or use for the requested discovery."); *Kulzer v. Biomet Inc.*, 3:09–MC–275 CAN, 2009 WL 3642746, at *5 (N.D. Ind. Oct. 29, 2009) ("[C]ourts in other circuits have narrowed their consideration of evidence under this factor to authoritative proof of a foreign tribunal's position on the matters, such as when a 'representative of a foreign sovereign has expressly and clearly made its position known.'") (quoting

*Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374, at *6 (N.D.N.Y. Aug. 18, 2008)).

Medytox claims that the Korean court would be receptive to assistance because "the Korean authorities have already summoned Dr. Lee to speak with them several times in connection with the Daewoong Defendants' trade secret misappropriation, with the most recent call in February 2018, but were unable to compel him to respond because he resides outside of Korea." [Dkt. 2 at 19.]

Dr. Lee does not deny the allegation that the Korean authorities have sought unsuccessfully to interview him. [*See* Dkt. 15.] Instead, he argues that the Korean court would be unreceptive to American assistance because the Korean Action is already well underway, and the Korean court has prioritized expert testing and analysis over testimonial evidence to determine whether the Daewoong Defendants illegally acquired Medytox's BTX strain. Dr. Lee supports this argument by relying on a Korean news article which purportedly summarizes comments made by the Korean court at a preliminary hearing on August 17, 2018. Moreover, Dr. Lee argues that this Court should, in an effort to honor the Korean court's preferred sequencing, delay ruling on the Section 1782 application. These arguments are unpersuasive.

Dr. Lee has not provided, and this Court has not received, any "authoritative proof" that the Korean court would be opposed to assistance from this Court. *See Qualcomm*, 162 F. Supp. 3d at 1040. The fact that the Korean authorities have attempted to speak with Dr. Lee but were unable to compel his participation weighs

in favor of finding that the Korean court would be receptive to assistance from this Court. Based on the absence of authoritative proof from the Korean court that it would oppose the request for discovery, the Undersigned submits that this factor weighs in favor of granting Medytox's application.

### (c.) Factor Three: Circumventing Foreign Discovery Procedures

The third discretionary factor looks to whether the § 1782 application is an attempt to circumvent the foreign tribunal's proof-gathering restrictions. *Intel,* 452 U.S. at 264–65. When analyzing this factor, courts regularly look to see if granting the application would undermine a proof-gathering *policy* of the foreign tribunal. *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States."); *see also*, *Qualcomm* 162 F. Supp. 3d 1029; *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009).

In its application, Medytox maintains that the Korean court regularly seeks Section 1782 discovery and permits this evidence in its proceedings. [Dkt. 2 at 25.] Dr. Lee fails to rebut this argument and instead argues that by granting the application, the Court would encourage foreign litigants to engage in forum shopping, undermining the purpose behind Section 1782.

Relying on *Kulzer v. Biomet, Inc.,* Dr. Lee argues that by granting Meytox's application, the Court would permit Medytox to circumvent both the California

court's dismissal order and the Indiana court's stay order. *Kulzer v. Biomet, Inc.,* No. 3:09-MC-275 CAN, 2009 WL 3642746, at *6 (N.D. Ind. Oct. 29, 2009) (the court reasoned that Section 1782 should not be used by foreign parties to "forum shop" whenever the procedures of their home tribunal were less favorable to their case.). This reliance, however, is misplaced. In *Biomet,* a foreign litigant filed two separate Section 1782 applications in the same district court. Once the first application was denied, the foreign petitioner filed a second § 1782 application in the same district court. Regarding the second application, the court determined that the foreign litigant was improperly seeking to avoid more restrictive discovery procedures in the foreign country and, accordingly, denied the second application. Here, Medytox did not request any discovery in the California or Indiana cases that was denied; in fact, both the California Action and the Indiana Action have been stayed pending the resolution of the Korean Action. Permitting discovery to proceed in this Court for use in the Korean Action does not circumvent the United States-based actions.

In *Intel,* the Supreme Court noted that § 1782 should allow applicants to use American discovery tools that might not be permitted in the foreign jurisdiction. *Intel,* 542 U.S. at 260–62 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). *See Heraeus Zulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596-97 (7th Cir. 2011). Medytox maintains that the Korean court system does not allow for pre-trial discovery and the practice of depositions does not exist. [Dkt. 2 at 20]. Dr. Lee does

not refute this assertion. As a resident of the Southern District of Indiana, Dr. Lee cannot be compelled by the Korean court to produce any evidence in the foreign litigation. Medytox has demonstrated its need for American-style discovery and established that this evidence is not otherwise available in the Korean court.

Dr. Lee does not argue that the use of American discovery tools would undermine, offend, or upset Korean proof-gathering polices. Instead, Dr. Lee attempts to shift the Court's analysis, arguing that the Court should deny the application because Medytox can obtain the documents and testimony it seeks through Korea's legal system. Specifically, Dr. Lee claims that Medytox can obtain the documents it seeks from the Daewoong Defendants; Medytox could obtain all of the requested information if it would sue Dr. Lee in Korea; Medytox has failed to attempt to obtain this discovery through Korean processes first; and Dr. Lee can testify at trial either in person or via videoconference. These arguments lack merit.

In its application, Medytox argues that it intends to question Dr. Lee, a non-participant in the Korean Action, regarding his knowledge about the Daewoong Defendants' development of its BTX strain and drug and intends to submit requests for production about documents related to said knowledge. Dr. Lee is the most appropriate conduit for securing this information and these documents.

To require Medytox to first attempt to obtain the discovery from the Korean court "would virtually nullify the statutory provision that interested persons may apply for discovery orders." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D.

Ill. 2006) (internal citations omitted). "Congress designed the statute to provide efficient and fair assistance to interested parties engaged in foreign proceedings. The statute does not require parties to first seek the discovery in the foreign tribunal." *Id.* Moreover, the Supreme Court in *Intel* found that Section 1782 does not impose an exhaustion requirement. *In re IKB Deutsche Industriebank AG*, No. 09-CV-7852, 2010 WL 1526070, at *3 (N.D. Ill. Apr. 8, 2010). Further, courts within the Seventh Circuit, relying on the plain language of the statute, have "refused to graft a quasi-exhaustion requirement onto § 1782 that would force litigants to seek information through the foreign and international tribunal before requesting discovery from the district court." *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1031 (N.D. Ill. 2006) (internal quotations omitted); *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) (citation omitted) (holding that even though the evidence sought was not discoverable in the foreign country, that alone does not preclude granting a Section 1782 application). Thus, Dr. Lee's exhaustion arguments fail. This statute does not require Medytox to exhaust all available remedies in Korea before requesting assistance from this Court.

Dr. Lee's contention that rather than taking his deposition, Medytox should use Korean proof-gathering practices and call him as a witness at the Korean trial is also unpersuasive. Medytox argues that the Korean proof-gathering devices are ineffective because the Korean court cannot compel Dr. Lee to testify before it

because he resides outside of Korea.[6] [Dkt. 2-1 at 5–6.] Dr. Lee does not dispute the ineffectiveness of the Korean court's ability to compel him to testify, but rather, he asserts that he has promised to testify at trial if Medytox calls him as a witness. Medytox's request to depose Dr. Lee does not circumvent any Korean discovery procedures because the Korean law does not extend so far as to contemplate depositions. A deposition – a pre-trial discovery tool that allows an interrogator to inquire into matters that it may not be able to at trial – is not the equivalent of trial testimony. Moreover, Dr. Lee's promise to appear at trial in the Korean court to give testimony is not binding on Dr. Lee, or any party, and does not hinge upon the existence of any proof-gathering policy of the Korean court. This argument does not warrant further consideration under the factor three analysis.

Dr. Lee has not identified any United States policy that would be obstructed by allowing the requested discovery to proceed, nor has he shown that the Korean court would be unreceptive to materials discovered under Section 1782. Dr. Lee has failed to demonstrate that Medytox's Application is an attempt to circumvent Korean proof-gathering restrictions and, therefore, the Undersigned submits that this factor weighs in favor of granting Medytox's application.

### (d.) Factor Four: Unduly Intrusive or Burdensome

Under the final discretionary factor, the Court looks to see if the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 241. This factor

---

[6] In order for the Korean court to fine or detain an individual, the individual must be within its jurisdiction. Because Dr. Lee resides in Indiana, the Korean court cannot enforce any order fining or detaining him. (Bo Kyung Lim Decl. 5–6.)

requires an examination of the breadth of the discovery requests for the Court to determine whether it is unduly intrusive or burdensome. *See In re Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).

Section 1782 does not establish a standard for discovery. *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012). Instead, it is a screening mechanism "designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and . . . [S]ection 1782 drops out." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); 28 U.S.C. § 1782(a).

Medytox's international litigation centers on whether the Daewoong Defendants' BTX strain was acquired by stealing Medytox's BTX strain and utilizing Medytox's trade secrets without authorization. Dr. Lee, a former researcher for Medytox and former consultant of the Daewoong Defendants, is central to this issue. Dr. Lee has failed to demonstrate any abuses of the discovery process that would occur by permitting Medytox's discovery requests. Thus, this factor weighs in favor of granting the Section 1782 application. The balance of all the factors support granting the discovery request.

Once the Court has decided to grant discovery, the discovery requests are managed by Rule 26[7] of the Federal Rules of Civil Procedure, and other rules

---

[7] Rule 26(b)(1) allows parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

governing discovery in federal courts. *Heraeus Kulzer*, 633 F.3d at 598; *see also*, *In re Labor Court of Brazil*, 466 F. Supp.2d at 1033. Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2).

Medytox has requested to conduct a deposition of Dr. Lee regarding the subject matter of the Korean action. Dr. Lee asserts that the request to depose him is unduly burdensome because he has already traveled to Korea twice for interviews with investigators with the SMPA in the pending international criminal case. Medytox's request to depose Dr. Lee is not unduly burdensome under the Rule 26(b) analysis. "A showing of 'exceptional circumstances' has been required for a court to prohibit completely the taking of a deposition." *Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) (citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C. 1987)). Sitting for a deposition within one's home district does not, and cannot, constitute an undue burden or amount to "exceptional circumstances." Dr. Lee indicated that he is willing to voluntarily subject himself to the burden of traveling to Korea to testify at trial, so it is difficult to understand how giving testimony within a few miles of his home would constitute an undue burden. Dr. Lee asserts that volunteering to testify at trial in Korea has

---

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

eradicated the need for his deposition; this argument is meritless. If the Court were to endorse Dr. Lee's argument, then almost every non-party deponent could avoid being deposed by claiming they might have to testify at trial. Such a finding would be incompatible with our discovery rules. Dr. Lee has failed to demonstrate that sitting for a deposition in his home district would be an undue burden.

The recent initiation of International Trade Commission ("ITC") proceedings does not significantly alter the Court's analysis. [Dkt. 28.] Sitting for two depositions does increase the burden to Dr. Lee, but this alone does not justify denying outright Medytox's Application. Instead, to the extent that the ITC deposition has already occurred, Medytox should narrow the scope of its deposition of Dr. Lee to information not already obtained during the ITC deposition.[8] *See* Fed. R. Civ. P. 26(b); *cf. Heraeus Kulzer*, 633 F.3d at 597–98. If the deposition has yet to occur, then the Parties should meet and confer in good faith about the best way to prevent duplicative depositions. *Cf. Heraeus Kulzer*, 633 F.3d at 597–98.

In addition to this request for a deposition, Medytox has requested to subpoena the production of a variety of documents, including, but not limited to: (1) all documents relating to the Korean Action; (2) all documents concerning Dr. Lee's Employment with Medytox; (3) documents identifying any outside recipients of Medytox Property; (4) documents identifying any Medytox Property removed from Medytox's facilities; (5) documents identifying the present location of any Medytox

---

[8] Both parties speculate that portions of Dr. Lee's deposition may be subject to a protective order; no protective order has been presented to this Court and, thus, these speculative arguments are premature and will not affect the Undersigned's analysis.

Property that Dr. Lee retained after his employment; (6) all documents concerning Dr. Lee's employment or service to the Daewoong Defendants related to BTX drugs; (7) all documents or Medytox Property that Dr. Lee retained in his possession after his employment with Medytox; (8) all documents concerning compensation Dr. Lee received from the Daewoong Defendants; (9) all documents concerning compensation Dr. Lee received from any person related to his services or information provided to the Daewoong Defendants; (10) all communications in any way related to BTX drugs; (11) all communications concerning the Daewoong Defendants' development of botulinum-related products; (12) all communications and documents exchanged between Dr. Lee's Medytox email address and his private Gmail account; and (13) all communications concerning Nabota, Evosyal, or other BTX drugs, documents obtained from Medytox, Medytox Property, the development of botulinum-related products, or the importation to the United States of any botulinum-related products.

Dr. Lee argues that these requests for production are overly broad and vague because they seek information from events that occurred over ten years ago. In addition, Dr. Lee argues that the document requests, if granted, would require him to produce thousands of irrelevant documents because Medytox has failed to identify specific documents with reasonable particularity, which results in the requests becoming an impermissible fishing expedition. In response, Medytox argues that it has attempted to narrowly tailor its requests in good faith and offered

to more narrowly tailor them, but Dr. Lee has refused to negotiate the scope of the requests.

Even though Medytox's application is narrowly tailored to the subject matter of the Korean Action, a few of the discovery requests are overbroad and must be further tailored. First, none of the requests contain limiting dates for the requested information. The scope of the requests should be reasonably limited to the period of time surrounding the alleged theft and subsequent misappropriation of Medytox's trade secrets by Dr. Lee. Second, the requests fail to narrowly tailor the category of documents, instead it seeks "all documents" or "all communications" concerning "any person" or "any services" in some way related to the Korean Action. This type of language is too broad and could capture many irrelevant documents. *See Doe v. Nebraska*, 788 F. Supp. 2d 975, 982 (D. Neb. 2011); *see also Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11–cv–1108–SEB–TAB, 2013 WL 5915196, at *2 (S.D. Ind. Nov. 1, 2013) ("Language such as 'any and all' or 'including but not limited to' raise a red flag that the request is too broad.").

Although, Medytox's requests are overbroad, it does not follow that Medytox is not entitled to any discovery. The requests are relevant to the pending international case and necessary for Medytox to prepare its case against the Daewoong Defendants. Medytox has expressed a willingness to narrow its discovery requests, and this Court encourages the parties to work cooperatively to narrow the discovery requests as appropriate. In compliance with Local Rule 37-1, the Undersigned recommends that the parties meet and confer regarding the scope

of the document requests. *See Heraeus Kulzer*, 633 F.3d at 598; *see also In re Morning Song Bird Food Litig.*, No. 1:17-mc-78-JMS-TAB, 2018 WL 1948807, at *2 (S. D. Ind. Apr. 25, 2018); S.D. Ind. L.R. 37-1. To the extent the parties are unable to resolve any disputes that arise in the context of narrowing the requests for production, following the meet and confer, they may seek the Court's assistance in accordance with the Local Rule's discovery motion practice.

## CONCLUSION

For the reasons explained above, the Undersigned submits that Medytox has satisfied the three statutory requirements of 28 U.S.C. § 1782 and that all four discretionary factors weigh in favor of granting this Application. Accordingly, the Magistrate Judge **RECOMMENDS** that Medytox's Application be **GRANTED**. Further, the principles of abstention and comity do not direct this Court to refrain from exercising its jurisdiction over this matter.

The Parties should be directed to meet and confer in good faith, pursuant to Local Rule 37-1, to negotiate the scope of Medytox's requests for production and establish the date, time, and location of Dr. Lee's deposition.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. §636(b)(1). Failure to timely file objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

Date: 7/16/2019

*Doris L. Pryor*

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record.